FILED
SUPERIOR COURT
OF GUAM

2022 MAR -3 PM 3:30

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. CM0260-21 |
| vs. | DECISION AND ORDER |
| JAMES DARROW JONES, | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on November 24, 2021, for hearing on Defendant **JAMES DARROW JONES'S** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Sean Brown on behalf of the People of Guam ("the Government") and Defendant with counsel, Assistant Public Defender Alisha Molyneux. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On July 19, 2021, Defendant was charged with one count of Driving While Impaired (As a Misdemeanor). (Magistrate's Compl., Jul. 19, 2021). This charge stems from alleged events occurring on or about July 18, 2021 at approximately 5:03 a.m.

On October 26, 2021, Defendant filed the instant Motion. On November 1, 2021, the Government filed its Opposition. On November 24, 2021, the Court heard sworn testimony from Guam Police Department Officers Sarapino Artui ("Officer Artui"), Sammy Sumagaysay

II ("Officer Sumagaysay"), and Johnny K.A. Blas ("Officer Blas"). The Court then gave the parties leave to file proposed findings of fact and conclusions of law. On December 2, 2021, the Government filed its proposed findings of fact and conclusions of law. The Court did not receive any proposed findings from Defendant.

At the Suppression Hearing, the Court ascertained the following facts:

1. Early in the morning, on or about July 18, 2021, Officer Artui and Officer Blas were patrolling when they received information from desk watch about a vehicle parked on the inner lane on Route 1 by Kmart intersection. Officer Blas was operating the vehicle; Officer Artui was a passenger.

2. Officer Sumagaysay was assigned as desk watch officer on that morning. He testified he received a call from dispatch regarding an anonymous call about a vehicle, a Kia Forte, with a sleeping driver at Kmart. Officer Sumagaysay did not personally speak with the caller. Officer Sumagaysay passed the information along to Officers Artui and Blas.

3. Officer Artui and Officer Blas proceeded to the location from Tumon and located the vehicle fitting the description told to them. Officer Blas testified that he also matched the license plate, PT5072, previously given to them by desk watch. Officer Artui testified that it didn't take them long to arrive. Officer Artui testified he noticed a male individual standing outside the vehicle knocking on the driver's side door. Officer Artui did not know if the person standing outside the car had also been driving or had been walking in the area, as he didn't see any other parked vehicle on the road.

4. The parked vehicle was in the inner lane next to the left turn lane to go down JFK hill. Officer Artui testified that there were other cars having to change lanes because of the parked vehicle. Officer Blas testified that the light was green going northbound on Marine Drive at that time.

5. Because they came from Tumon by JFK hill, Officer Blas had to make a u-turn at Shell Gas Station to safely approach the vehicle from behind. When they returned,

they noticed the vehicle started moving, heading north. Officer Artui estimated that they followed the vehicle on Marine Drive for two or three minutes until it turned into the parking lot.

6. Officer Artui testified that there were several cars on the road at this time.

7. Officer Artui testified that the lights were not activated on the patrol car while they were following Defendant. Officer Artui testified that they didn't turn on their sirens immediately because they wanted to find a safe place to pull the vehicle over.

8. Officer Artui testified that as they were following Defendant, he observed him change lanes without signaling.

9. After Defendant turned right to go to Harmon Industrial Park, Officer Artui and Officer Blas caught up with him and decided to pull him over.

10. Defendant parked at the Cafeteria parking lot in Harmon Industrial Park.

11. Officer Artui and Officer Blas both testified that they turned on their lights and siren, and that once their vehicle was parked, Defendant had already stepped out of his vehicle.

12. Defendant was told to get back into his vehicle, but did not comply. Officer Artui testified that Defendant was verbally combative, arguing about why he was pulled over.

13. Officer Artui testified that Defendant appeared intoxicated to him and that Officer Officer Blas had the most contact with Defendant.

14. Officer Blas testified that he approached Defendant and advised him that he was suspected of falling asleep at the wheel. Defendant said no, he wasn't. Officer Blas testified he asked Defendant if he had anything to drink because he smelt a strong odor of an intoxicating beverage. Defendant responded that he had a few drinks.

15. Officer Blas testified that Defendant had bloodshot watery eyes, and that he had a hard time maintaining his balance. Officer Blas also testified that Defendant had slurred speech when he was talking.

## DISCUSSION

Defendant moves the Court to suppress all evidence in this matter because "such evidence was obtained as the direct result of an improper, illegal traffic stop." (Mot. Suppress at 2, Oct. 26, 2021).

The Fourth Amendment to the United States Constitution "permits brief investigative detentions when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). *See also People v. Chargualaf,* 2001 Guam 1 ¶ 17 ("it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation."). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted). The "lawfulness of a *Terry* stop turns not on the officer's actual state of mind at the time the challenged action was taken, but rather on an objective assessment of the officer's actions. In other words, if sufficient objective evidence exists to demonstrate reasonable suspicion, a *Terry* stop is justified regardless of a police officer's subjective intent." *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (internal quotation marks and citations omitted). "An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also be grounded in objective facts and be capable of rational explanation." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks and citation omitted). "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal citations and quotation marks omitted). "These principles apply with full force to investigative stops based on information from anonymous tips." *Id.* "[A] reliable tip will justify an investigative stop only if it creates

reasonable suspicion that 'criminal activity may be afoot.'" *Id.* at 401 (citing *Terry*, 392 U.S. at 30).

Here, an anonymous caller reported that Defendant was asleep in his vehicle at the Kmart intersection on Marine Drive. The caller gave GPD a description of the vehicle and the vehicle's license plate number. As the caller reported firsthand observations of an ongoing event, the Court finds that the call, although anonymous, adds weight to a finding of reasonable suspicion. *See Navarette*, 572 U.S. at 1688-89. Further, Officers Artui and Blas confirmed the vehicle's location on Marine Drive shortly thereafter, and further observed a male individual standing outside the vehicle knocking on the driver's door. The Court finds that the behavior alleged by the caller and further observed by Officers Artui and Blas, viewed from the standpoint of an objectively reasonable police officer, amounts to reasonable suspicion of possible driving while impaired or reckless driving. Officers Artui and Blas pursued the tip of the possible DUI and followed the Kia Forte after it began moving again. Upon stopping Defendant, the officers observed he had slurred speech, an inability to maintain balance, bloodshot water eyes, and a strong odor of intoxicating beverage emitting from his person. Accordingly, the Court finds that Officers Artui and Blas had reasonable suspicion to warrant a traffic stop and to arrest Defendant for the offense of driving while impaired.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. A Status Hearing is set for **April 5, 2022** at **10:00 a.m.** via teleconference.

**IT IS SO ORDERED** this 3rd day of March, 2022.

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
AGS & PDSC

Date: 3/3/22  Time: 3:45pm

Deputy Clerk, Superior Court of Guam

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. Jones*
Case No. CM0260-21
Decision and Order